**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL LEWIS** and **TAMMY LIVINGSTON**, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) No. 06 C 4314 |
| **PDV AMERICA, INC., CITGO PETROLEUM CORPORATION**, and **CITGO LEMONT REFINERY**, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant CITGO Petroleum Corporation ("CITGO") has filed a motion for summary judgment against plaintiffs Michael Lewis and Tammy Livingston (collectively "plaintiffs"). For the following reasons, the motion is granted.

I.

Plaintiffs were employed by a company that contracted with CITGO and other defendants to perform work at a refinery located in Lemont, Illinois. CITGO owned, operated, maintained and/or controlled that refinery. Plaintiffs allege that while they worked at the refinery they were injured by breathing chemical fumes and that their injuries were caused by the negligent acts or omissions of CITGO and the other defendants.

The incident in question took place on March 11, 2001. Plaintiffs and CITGO workers were working on an elevated outdoor platform when they were exposed to hydrogen sulfide. Lewis fell on the platform as a result of a blast of gas. Plaintiffs and the

CITGO workers then left the platform by climbing down. Lewis climbed down on his own.

Once on the ground, plaintiffs received treatment at the refinery from both CITGO emergency and local first response personnel. Plaintiffs were also taken by ambulance to the emergency room at a nearby hospital where they were physically examined. Plaintiffs returned to work the next day. In days following the incident, plaintiffs obtained follow-up medical care from Dr. Bess Metrou, a physician with a health practice contracted by CITGO to provide services for refinery employees. Specifically, Dr. Metrou examined plaintiffs on March 13, 15, and 20, 2001. Plaintiffs never sought any further medical treatment for any ailments related to the incident until a lawsuit was filed.

Both plaintiffs are cigarette smokers. As of 2003, Lewis had been a smoker for more than 15 years and Livingston for 10 years. To date, both plaintiffs continue to smoke half a pack of cigarettes a day.

Plaintiffs have described their injuries as follows. In May 2001, plaintiffs filed workers' compensation claims with the Illinois Industrial Commission ("IIC"). Plaintiffs were represented by counsel. In the IIC form, plaintiffs responded to the question "What part of the body was affected [as a result of the incident]?" as follows: "[e]ntire body affected, unknown yet as

to result." In undated answers to interrogatories, Lewis described his injuries as

> headaches and ongoing breathing difficulties including shortness of breath and difficulty breathing. Additionally, the plaintiff has suffered headaches, nausea and lack of sex drive. As further stated above, the plaintiff is soon to undergo testing to ascertain whether the breathing difficulties are caused by occupational asthma, or some like condition, and will defer to the experts relative to whether any condition causing the headaches or breathing difficulties is related to the accident.

Also in undated answers to interrogatories, Livingston described her injuries as

> severe headaches and ongoing breathing difficulties. As further stated above, the plaintiff is soon to undergo testing to ascertain whether the breathing difficulties are caused by occupational asthma, or some like condition, and will defer to the experts relative to whether any condition causing the headaches or breathing difficulties is related to the accident.

In August 2003, plaintiffs were examined by Dr. Jordan Fink who diagnosed Lewis with occupational asthma related to exposure to chemicals as a result of the incident, and Livingston with "a bronchitic problem" and potentially a "sinus disease." Plaintiffs were also examined by Dr. Norman Kohn, a neurologist and psychiatrist, who diagnosed Lewis with persistent headaches and impaired concentration, and Livingston with persistent headaches and a mood disorder, possibly bipolar disorder. Dr. Kohn also opines that Livingston "very likely suffered posttraumatic stress disorder" immediately after the incident.

3

II.

In moving for summary judgment, defendants first challenge the admissibility of the deposition testimony of Dr. Fink and Dr. Kohn — plaintiffs' expert witnesses. The admissibility of expert testimony is governed by Fed. R. Evid. 702, which reads

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

For expert testimony to be admitted under Rule 702, the movant must establish that the expert testimony is both reliable and would assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). The primary purpose of Rule 702 is to avoid confusing and unreliable expert testimony. *See id.* at 592*; Loeffel Steel Prod., Inc v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1110 (N.D. Ill 2005).

With respect to Dr. Fink, defendants challenge both his qualifications and methodology. Dr. Fink is a medical doctor who is an internist with specialty in allergies. Defendants take issue with his lack of training and experience in toxicology (the study of poisons) or epidemiology (the study of disease) and point out he has testified that he only spent about half an hour conducting

4

research on the effects of human exposure to hydrogen sulfide. Defendants also challenge Dr. Fink's methodology as unreliable and uninformed, for he did not review plaintiffs' medical records pre-dating the incident or have pertinent information about the concentration of hydrogen sulfide in plaintiffs' exposure. Ultimately, they argue Dr. Fink's opinions are speculative and based only on plaintiffs' own self-reported symptoms and fail to provide evidence of general or specific causation. Defendants raise similar objections with respect to Dr. Kohn's methodology.

Plaintiffs fail to respond to defendants' objections to the admissibility of these experts' testimony under *Daubert*. Instead, plaintiffs simply argue that I must construe all facts in the light most favorable to them in light of FED. R. CIV. P. 56. This misses the point, because plaintiffs cannot rely on inadmissible evidence in order to defeat a motion for summary judgment. *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (citing *Rogers v. City of Chicago*, 320 F.3d 748, 751 (7th Cir. 2003)). Furthermore, as the proponents of expert testimony, it is plaintiffs' burden to establish the proposed testimony is reliable and would assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *See Daubert*, 509 U.S. at 589-91; *Drebing v. Provo Group, Inc.*, -- F. Supp. 2d --, 2007 WL 2982224, at *2 (N.D. Ill. Oct. 11, 2007); *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 890 F. Supp. 756, 758 (N.D. Ill. 1995). Plaintiffs have not

5

met this burden. Accordingly, I will not consider this testimony in deciding the motion for summary judgment.

### III.

Summary judgment is only appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007) (citing F<small>ED</small>. R. C<small>IV</small>. P. 56(c)). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I do not make "credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment should be denied. *Anderson*, 477 U.S. at 248.

Defendants move for summary judgment on the grounds that plaintiffs cannot show causation. In order to make a prima facie case for negligence under Illinois law, plaintiffs bear the burden of establishing the existence of a duty, a breach, proximate causation, and damages. *See, e.g., Enrhart v. The Lockformer Co.*, No. 02 C 7068, 2005 WL 1869731, at *1 (N.D. Ill. Aug. 2, 2005) (Zagel, J.) (citation omitted); *see also Cunis v. Brennan*, 56 Ill. 2d 372, 374 308 N.E.2d 617, 618 (Ill. 1974). It is plaintiffs'

6

burden to set forth concrete evidence demonstrating the existence of a question of material fact with respect to causation; speculation or remote possibilities will not do. *See Enrhart,* 2005 WL 1869731, at *1; *see generally Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir. 1997) (citing *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996)); *Avery v. Mapco Gas Prods., Inc.*, 18 F.3d 448, 453-54 (7th Cir. 1994) (citing *Schamel v. Textron-lycoming*, 1 F.3d 655, 657-58 (7th Cir. 1993)). "Under Illinois law, to serve as the sole basis for a conclusion that an act was the proximate cause of the plaintiff's injury, an expert must be able to testify with a reasonable degree of medical certainty that proximate cause existed." *Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir. 1997); *see also Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007) (summary judgment was appropriate in light of absence of "expert evidence" in support of causation theory aside from the "mere existence of a temporal relationship" between alleged injurious act and onset of symptoms); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (plaintiff failed to show causation in the absence of expert testimony because "the medical effects of second hand smoke [were] not within the ken of the ordinary person"); *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 611-12 (7th Cir. 1993) (summary judgment was appropriate in light of absence of expert testimony on causation for negligence action); *Kirk v. Nat'l Railroad Passenger Corp.*, No. 06 C 2169, 2007 WL

1832115, at *1-2 (N.D. Ill. June 25, 2007) (Aspen, J.); *Wroble v. The Lockformer Co.*, No. 02 C 4992, 2006 WL 695254, at *1-2 (N.D. Ill. Mar. 17, 2006) (Zagel, J.); *Enrhart*, 2005 WL 1869731, at *1-2.

Plaintiffs argue the testimony by defendants' own experts, Dr. Jerry Cugell and Dr. Jerry Sweet, and the treating physician, Dr. Metrou, preclude summary judgment in this case. (Pl. Br. at 7.)[1] Dr. Cugell only examined and provided a medical opinion concerning Lewis; he testified that any pulmonary discomfort or irregularities experienced by Lewis are the result of smoking – not exposure to hydrogen sulfide or another gas. In turn, Dr. Sweet examined and provided a medical opinion concerning Livingston's psychological condition; he testified Livingston does not suffer from post-traumatic stress disorder, that she is fully capable of functioning on a daily basis and, at most, Livingston suffered from "mild anxiety" as a result of the incident which manifests itself today in Livingston's insistence in double-checking all her work equipment because of safety concerns. In short, he did not find Livingston suffered from any psychological disorders as a result of the incident. Dr. Metrou testified that her March 2001 examinations of plaintiffs, which included physical and neurological examinations, x-rays, and blood tests, did not reveal

---

[1] Plaintiffs' response to defendants' statement of material fact fails to comport with local rule 56.1(b)(3)(B) because it does not contain any specific references to the record when identifying a disagreement.

any injuries or abnormalities in plaintiffs' respiratory systems. Lewis complained of back pains during the initial visit and she prescribed Tylenol. Dr. Metrou acknowledged that within a few days after the incident, Lewis complained of generalized body aches, occasional dizziness, shortness of breath, an irritated throat, a sparse cough, nausea and vomiting, and loose stools. However, Dr. Metrou also concluded that Lewis' complaints were not related to the hydrogen sulfide exposure because they occurred days after the exposure. (Ex. M, Metrou Tr. at 83.) Both Dr. Metrou and Dr. Cugell testified that injuries related to exposure to hydrogen sulfide manifest at the time of the exposure, not later in time.

Plaintiffs' have not set forth evidence demonstrating the existence of a triable issue of material fact with respect to causation. First, plaintiffs fail to set forth expert testimony in support of their causation theory, by failing to establish the admissibility of such testimony. The medical effects of hydrogen sulfide exposure are not within the knowledge of the ordinary person. *See Goffman*, 59 F.3d at 672; *Porter*, 9 F.3d at 612; *Kirk*, 2007 WL 1832115, at *1-2; *Wroble*, 2006 WL 695254, at *1-2; *Enrhart*, 2005 WL 1869731, at *1-2. Second, none of the defendants' experts' testimony provides evidence of causation. Although defendants' witnesses do acknowledge that plaintiffs were potentially exposed to hydrogen sulfide, none of them concluded that was the cause of any of plaintiffs' purported injuries. Accordingly, plaintiffs'

9

reliance on this testimony in opposition to defendants' motion for summary judgment is misplaced.  Plaintiffs have failed to set forth admissible evidence creating a triable issue with respect to causation and, therefore, defendants' motion for summary judgment is granted.

III.

For the foregoing reasons, defendants' motion for summary judgment is granted.  Defendants' motion for partial summary judgment on punitive damages is denied as moot.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 30, 2008